# Exhibit A

## SETTLEMENT AGREEMENT

This settlement agreement ("Agreement") is entered into between plaintiff Jeffrey Lackie ("plaintiff"), on behalf of himself and all other members of the "Settlement Class" as that term is defined in paragraph II.A of this Agreement, and defendant Stingray Pressure Pumping LLC ("Stingray" or "defendant") (collectively, the "parties"), by and through their respective counsel, to resolve all claims asserted in *Lackie v. Stingray Pressure Pumping LLC*, Case No. 2:17-cv-00083-EAS-KAJ (S.D. Ohio filed Jan. 27, 2017) (the "Lawsuit").

I.   RECITALS

WHEREAS, on January 27, 2017, plaintiff filed the Lawsuit in the United States District Court for the Southern District of Ohio ("Court") on behalf of himself and a putative class of Stingray field mechanics, in which plaintiff alleges that defendant failed to properly pay plaintiff and all similarly situated field mechanics overtime for all hours worked in excess of 40 in a workweek in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and Chapter 4111 of the Ohio Revised Code; and

WHEREAS, the purpose of this Agreement is to finally and fully resolve, settle, release, and discharge all claims that were, or that could have been, alleged or asserted by plaintiff, individually and on behalf of all Settlement Class members, against defendant in the Lawsuit, including without limitation any claims for unpaid overtime, improperly calculated overtime, liquidated or other damages, attorney's fees and costs, and any other claim for relief asserted by plaintiff under federal or state law;

NOW, THEREFORE, in consideration of the mutual covenants and promises contained in this Agreement and other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, and to avoid litigation, the parties hereby agree as follows:

II.   SETTLEMENT CLASS

A.   For purposes of this Agreement, the "Settlement Class" shall include all field mechanics who worked for defendant at any time from July 13, 2013 until October 4, 2015.

B.   For purposes of this Agreement, "Claimants" are Settlement Class members who do not opt-out of the settlement and who timely return a completed "Claim Form and Release Agreement" as described in paragraph V.C.1.f.

C.   Nothing herein shall be construed as an admission or acknowledgement by the parties that any class or collective action treatment is either proper or improper in the Lawsuit, except for purposes of settlement. Neither the Agreement nor approval by the Court of the Agreement shall be admissible in any other proceeding regarding the propriety of class or collective action treatment.

D.   In the event this Agreement is not approved, is terminated, or fails to be enforceable, the parties shall not be deemed to have waived their claims, positions, objections, or defenses in the Lawsuit, including their positions on whether the Lawsuit is appropriate for class or collective action treatment.

III.  COMPROMISE ACKNOWLEDGMENT

A.    The parties and their respective counsel agree that this Agreement is entered into solely as a compromise with respect to disputed claims, and that this Agreement is not, and is not to be construed as, an admission by defendant of any liability whatsoever or of a violation of any federal, state, or local statute, ordinance, regulation, or order or of any other obligation or duty at law or equity.  The parties further agree that the furnishing of consideration shall not be deemed or construed for any purpose as an admission of liability or wrongful conduct of any kind by defendant.

B.    The parties have engaged in fact investigation and informal discovery of the claims and defenses in the Lawsuit, including analyzing the relevant law and payroll information.  Relying upon their fact investigations and analyses, the parties have engaged in arms-length settlement negotiations.

C.    Nothing in this Agreement or any action taken to implement it or any statements, discussions, communications, or materials prepared or used during the course of settlement negotiations shall be used in any other proceeding of any kind or be considered evidence of a violation of any federal, state, or local law, statute, rule, or executive order, or any obligation or duty at law or equity.  However, this Agreement may be used in any proceeding that has as its purpose the interpretation or enforcement of the Agreement.

IV.  CERTIFICATION OF A COLLECTIVE AND CLASS ACTION FOR SETTLEMENT PURPOSES ONLY

A.    For settlement purposes only, the parties stipulate to the certification of a Settlement Class consisting of all field mechanics who worked for defendant at any time from July 13, 2013 until October 4, 2015.  Defendant reserves its right to challenge the propriety of certification if the settlement is not approved by the Court.

B.    Defendant agrees not to object to plaintiff's request that Nilges Draher LLC be appointed "Class Counsel" for purposes of this Agreement.

C.    The certification of the Settlement Class, appointment of plaintiff as "Class Representative," and appointment of Class Counsel by the Court will be binding on the parties with respect to settlement of the Lawsuit only.  In the event this Agreement is terminated as provided herein, certification of the Settlement Class will be vacated and the Lawsuit will proceed as if the Settlement Class had never been certified.

V.  TERMS OF THE SETTLEMENT AGREEMENT

A.    Settlement Amounts

1.    Gross Settlement Amount: In full consideration for the terms, conditions, and promises in this Agreement, defendant agrees to a "Gross Settlement Amount" not to exceed $40,500.00.  The Gross Settlement Amount includes all amounts to be paid by defendant under this Agreement, including, without limitation, settlement payments to Settlement Class members, attorney's fees, litigation costs, interest, penalties, enhancement payments, and taxes, except that if the employer's share of payroll taxes owed on payments to Claimants exceeds the difference between the Final Settlement Amount (as defined in paragraph V.D.1) and the Gross Settlement

Amount, defendant will pay the additional amount necessary to fully cover the employer's share of payroll taxes owed on the payments to Claimants (the "Payroll Tax True-Up"). With the potential exception of the Payroll Tax True-Up, the Gross Settlement Amount is the maximum amount that defendant is obligated to pay under this Agreement. Except with respect to the Payroll Tax True-Up described in this paragraph, in no event shall defendant be required to pay more than the Gross Settlement Amount in complete satisfaction of all its obligations under this Agreement.

2.    <u>Attorney's Fees and Litigation Costs</u>

a.    Defendant agrees not to oppose a request by Class Counsel for reasonable attorney's fees and litigation costs, not to exceed $13,500.00 and $2,200.00, respectively. Class Counsel agrees that it will not seek attorney's fees and reimbursement of litigation costs in excess of these amounts. Class Counsel's attorney's fees and litigation costs shall be paid solely from the Gross Settlement Amount. The Agreement is not contingent on approval of the above amounts. Thus, even if the Court approves lesser amounts for fees or costs, the Agreement shall remain fully enforceable.

b.    Within 30 days after an order by the Court granting final approval of this Agreement and an order by the Court approving an award of attorney's fees and litigation costs, whichever is later, and the expiration of the time for appealing all such orders or, if appealed, exhaustion of any such appeal ("Effective Date"), Class Counsel shall provide defendant with a signed IRS form W-9 for Nilges Draher LLC.

c.    Within 30 days after receipt from Class Counsel of the IRS form W-9 described in paragraph V.A.2.b, defendant shall transmit the funds for attorney's fees and litigation costs by check or wire transfer (if requested) to Class Counsel.

3.    <u>Named Plaintiff Enhancement</u>: Defendant agrees not to oppose plaintiff's request for approval of an enhancement payment out of the Gross Settlement Amount of up to $2,000 for his service as Class Representative and in exchange for executing the general release and waiver of claims against defendant attached hereto as Exhibit C (the "Release"). If an enhancement payment is approved by the Court, the enhancement payment shall be treated as non-wage income and shall be included on the IRS form 1099 issued to plaintiff. Plaintiff shall not receive the enhancement payment prior to (1) the date of final approval of the settlement by the Court; and (2) the expiration of a 7-day revocation period following his execution of the Release.

4.    <u>Employer Payroll Taxes</u>: The employer's share of FICA, FUTA, SUTA, Medicare, and any other applicable payroll taxes on amounts paid to Claimants shall be paid from unclaimed funds in the Gross Settlement Amount. If, after all payments to Claimants are made, the amount of employer's payroll taxes owed exceeds the amount remaining in the Gross Settlement Amount, then defendant will pay the Payroll Tax True-Up, which shall consist of the additional funds necessary to cover the employer's share of payroll taxes owed on payments to Claimants.

5.    <u>Payment Amounts To The Settlement Class Members</u>

a.    The Gross Settlement Amount, less all amounts allocated to attorney's fees, litigation costs, and plaintiff's enhancement payment, as described in paragraphs

V.A.2–V.A.3, will be allocated among the Settlement Class members on a pro rata basis based on the number of qualifying weeks worked by each Settlement Class member during the time period covered by this Agreement. If any member of the Settlement Class did not work a full workweek during the time period covered by this Agreement, he or she shall be treated for purposes of this Agreement as if he or she had worked a full workweek.

        b.      Defendant's payroll records will be used to determine the number of workweeks. Defendant will calculate the amounts to be allocated to each member of the Settlement Class as described in paragraph V.A.5.a.

        c.      Settlement Class members will not receive a settlement payment if they fail to submit a Claim Form and Release Agreement in accordance with paragraph V.C.1.f. Only Claimants will be eligible for a settlement payment.

        d.      Settlement payments made to Claimants will be allocated 50 percent to wages and 50 percent to non-wages (liquidated damages).

        e.      The appropriate withholding of federal, state, and local income taxes, each Claimant's share of FICA, FUTA, SUTA, Medicare, and any other payroll taxes, including backup withholding, if required, will be made from the settlement payments to Claimants. Defendant will also issue an IRS form W-2 to all Claimants at the times and in the manner required by the Internal Revenue Code of 1986 and consistent with this Agreement for the portion of each payment attributable to wages and an IRS form 1099 for the portion attributable to liquidated damages. If the Internal Revenue Code, the regulations issued thereunder, or other relevant tax laws change after the Effective Date, the processes in this subparagraph may be modified to ensure compliance with such changes. Defendant will be solely responsible for all withholdings.

        f.      Each Claimant will be solely responsible for the payment of taxes (federal, state, and local) owed by the Claimant as a result of any consideration received under this Agreement.

    B.   <u>Waiver And Release</u>

        1.      In exchange for the Settlement Amounts and the other good and valuable consideration provided pursuant to the terms of this Agreement, plaintiff, on behalf of himself, all other members of the Settlement Class who do not timely opt out of this Agreement, and his and their heirs, descendants, dependents, executors, administrators, successors, and assigns, fully and finally releases and discharges defendant, its prior and present subsidiaries, parents, affiliates, predecessors, successors, representatives, officers, directors, agents, attorneys, accountants, assigns, and employees, in their personal, individual, official, and/or corporate capacities, from any and all claims and rights of any kind that he or they may have, whether known or unknown, whether contingent or non-contingent, whether specifically asserted or not, arising through the date of preliminary approval of this Agreement by the Court, that are based upon or related to any claims under the FLSA, Chapter 4111 of the Ohio Revised Code, or any other local, state, or federal laws, including, but not limited to, all wage and hour, common, contract, and tort laws, that were or could have been asserted by plaintiff based upon the facts alleged in plaintiff's complaint, including, but not limited to, claims for back wages, penalties,

interest, liquidated or other damages, litigation costs, and attorney's fees. In addition, plaintiff will execute the Release attached hereto as Exhibit C.

2. Nothing in this Agreement shall be considered a waiver of any claims by Settlement Class members that may arise after the date the Agreement is preliminarily approved by the Court.

3. The parties acknowledge that the above waiver and release was separately bargained for and is a material element of this Agreement.

4. Upon final approval of the Agreement by the Court, execution of the Agreement by Class Counsel shall fully effectuate the release provisions herein to which each Settlement Class member is bound, even if each such person does not timely submit a complete Claim Form and Release Agreement.

C. <u>Court Approval</u>

1. <u>Preliminary Approval And Notice To Class Members</u>

a. The parties agree to submit a joint motion for preliminary approval of the settlement and proposed order granting preliminary approval by February 6, 2017. The parties' submission shall comply with the provisions of Section VI.E of this Agreement.

b. Within 30 days after the Court enters an order preliminarily approving the terms of this Agreement, defendant shall provide Class Counsel with the final list of Settlement Class members agreed to by the parties. The list shall include the name of each member of the Settlement Class and the settlement amount assigned to him or her.

c. Within 60 days after preliminary approval of this Agreement, defendant shall mail via first class U.S. mail a notice of preliminary approval to each Settlement Class member. A proposed notice to the Settlement Class members is attached to the Agreement as Exhibit A.

d. Defendant is solely responsible for sending the notices of preliminary approval to Settlement Class members.

e. The mailing to each Settlement Class member shall also include a Claim Form and Release Agreement. Such proposed Claim Form and Release Agreement is attached to the Agreement as Exhibit B.

f. The notice of preliminary approval sent to Settlement Class members shall instruct them that in order to participate in the settlement and receive payment under the settlement, they must complete and sign the enclosed Claim Form and Release Agreement and return it to Class Counsel postmarked no later than 60 days after the date the notice was initially mailed (the "Claims Period"). Settlement Class members are responsible for submitting the Claim Form and Release Agreement and providing proof of mailing if a dispute arises as to the timeliness of a Claim Form and Release Agreement.

g. For any notices and consent forms returned "undeliverable," defendant will use available databases in an effort to find a more current address and will re-mail

the notice within seven days of obtaining a more current address. Class Counsel may provide address information to defendant at any time.

    h.  Settlement Class members who fail to submit a timely and complete Claim Form and Release Agreement within the Claims Period shall be ineligible to receive any settlement payment pursuant to this Agreement. A Claim Form and Release Agreement is not complete if the Settlement Class member fails to make the required declaration or sign the Claim Form and Release Agreement as required.

    i.  The notice of preliminary approval shall explain that any Settlement Class member who wants to opt out of the Settlement Class in accordance with Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e)(4) must submit a written request to Class Counsel within 30 days of the initial mailing of the notice. Class Counsel shall be responsible for promptly filing any opt-out requests. Any Settlement Class member who requests to opt out of the Settlement Class will not receive a settlement payment. Plaintiff shall not be eligible for an Enhancement Payment if he requests to opt out of the Settlement Class.

    j.  The notice of preliminary approval sent to Settlement Class members shall also explain that any Settlement Class member may object to the settlement by submitting objections to the Court and serving them upon counsel of record, no later than 30 days after the initial mailing of the notice of preliminary approval. Objections must state the basis, and, if the objector intends to appear at the final approval hearing, he or she must state such fact and state the purpose of the appearance. The parties shall be permitted to respond in writing to objections within the time period set by the Court in its order granting preliminary approval. Settlement Class members who fail to file and serve timely objections shall be deemed to have waived objections to the settlement and shall be foreclosed from making any objections. By failing to make timely objections to the settlement, Settlement Class members also shall be foreclosed from appealing any aspect of the settlement after the Court's final approval.

    k.  The parties agree that neither they, nor their counsel, shall make any effort to solicit or otherwise persuade Settlement Class members to participate in, opt out of, or object to the settlement.

    l.  Pursuant to 28 U.S.C. § 1715(b), within 10 days after the parties file their motion for preliminary approval, defendant shall serve a notice of the proposed settlement on the appropriate federal and state officials.

    2.  <u>Final Approval</u>

    Following the end of the Claims Period, the parties shall file a joint motion for final approval of the settlement. The parties shall take all necessary actions to secure final approval of the Agreement. The motion for final approval shall be filed no later than 30 days after the end of the Claims Period or as otherwise directed by the Court.

    D.  <u>Final Settlement Amount</u>

    1.  Within 30 days after the Effective Date, defendant will fund the "Final Settlement Amount." The Final Settlement Amount shall be defined as (1) the Gross Settlement Amount less the payment amounts allocated to each Settlement Class member who did not

timely submit a complete Claim Form and Release Agreement; plus (2) the employer's share of payroll taxes owed on payments to Claimants.

        2.      The Final Settlement Amount will be used to make all payments required of Stingray under this Agreement, including payments to Claimants and Class Counsel, as well as taxes.  The Final Settlement Amount will be the maximum amount that Stingray pays under this Agreement.

        3.      The parties agree to treat the Final Settlement Amount as a "qualified settlement fund" within the meaning of Treas. Reg. section 1.468B-1.  Defendant is solely responsible for preparing and making the appropriate filings, for determining whether to treat the qualified settlement fund as a grantor trust or a separate entity for income tax purposes, and, if the latter, for determining whether defendant will make the "relation back election" to the earliest permitted date, as provided in Treas. Reg. section 1.46B-1(j)(2)).

        4.      For purposes of Internal Revenue Code of 1986 section 468B and Treas. Reg. section 1.468B-2(k)(3), defendant will be the qualified settlement administrator and will timely and properly file all information and other tax returns necessary or available with respect to the settlement amounts.  The returns will be consistent with this Agreement and in all events will reflect that all taxes, including any estimated taxes, interest, or penalties arising with respect to the income earned by the Final Settlement Amount, will be paid out of the Final Settlement Amount.  All taxes, expenses, and costs incurred relating to the operation and implementation of this paragraph, including, without limitation, any expenses of tax counsel or accountants and mailing costs and expenses relating to the filing or failing to file any returns ("Tax Expenses") will be paid out of the Final Settlement Amount and income earned on this amount.  Taxes and Tax Expenses will be treated as, and considered to be, a cost of administering the individual settlement amounts and the qualified settlement administrator will be obligated to withhold from individual settlement amounts any funds necessary to pay such taxes and Tax Expenses and any taxes that may be required to be withheld pursuant to Treas. Reg. section 1.468B-2(l)(2).

        5.      The parties agree to cooperate with each other and their tax attorneys and accountants to the extent necessary to carry out the provisions of paragraphs V.F.3–V.F.4.

        6.      Any amount remaining in the Final Settlement Amount after deducting the amounts specified in this Agreement, including payments to Settlement Class members, attorney's fees, litigation costs, interest, penalties, any approved enhancement payment, and taxes, will revert to defendant.

        7.      Notwithstanding the foregoing, defendant reserves the right, in its sole discretion, to accept complete Claim Forms and Release Agreements that are not timely submitted.  If an untimely Claim Form and Release Agreement is accepted, the Claimant who submitted the untimely form will receive his or her pro rata portion of the Gross Settlement Amount in accordance with paragraph V.A.5 of this Agreement.

    E.      Delivery Of Settlement Checks

        1.      Defendant shall mail settlement checks to Claimants within 30 days after the Final Settlement Amount is funded.  Each Claimant will receive two checks: one for back pay and one for liquidated damages.  Plaintiff's settlement checks shall include his enhancement

payment.  For any Claimant whose settlement check is returned as undelivered, defendant shall take reasonable steps to locate the Claimant and re-mail the check.  Class Counsel may assist in seeking to locate a Claimant whose settlement check was returned as undeliverable.

2.      Settlement checks that are not presented for payment within 180 days of the mailing date shall be transmitted by defendant to the state to which the unclaimed check was mailed.  Defendant shall provide notice to Class Counsel of transmittal of any unclaimed funds.  Defendant shall issue for each Claimant an IRS form 1099 showing the amount of liquidated damages paid and an IRS form W-2 showing the amount of back pay in the year it was paid.

F.      <u>Dismissal Of Lawsuit With Prejudice</u>

Settlement Class members, including plaintiff, who do not timely opt out of this Agreement accept the benefits provided herein as consideration in full and complete satisfaction and release of all the claims asserted in the Lawsuit and covered in this Agreement.  Plaintiff and all other Settlement Class members who do not timely opt out of this Agreement agree that all claims they asserted, or could have asserted, in the Lawsuit shall be dismissed with prejudice.  If the Court does not enter an order dismissing the claims of the Settlement Class members upon final approval of this Agreement, plaintiff shall file a stipulation dismissing all the claims in the Lawsuit with prejudice within 10 days of final approval of this Agreement.

VI.      <u>GENERAL PROVISIONS</u>

A.      <u>Documents</u>

To preserve private and confidential information, Class Counsel will, within 180 days after the Effective Date, destroy all payroll and Settlement Class member data provided prior to the filing, and during the course, of the Lawsuit.  Class Counsel will confirm in writing that the obligations set forth in this paragraph have been completed.

B.      <u>Parties' Authority</u>

1.      The signatories to this Agreement represent that they are fully authorized to enter into this Agreement and to bind the parties hereto to the terms and conditions of the Agreement.

2.      The parties acknowledge that throughout negotiations they have been represented by counsel experienced in wage and hour class litigation and that this Agreement is made with the consent and approval of counsel who have prepared the Agreement.

C.      <u>Mutual Full Cooperation</u>

The parties agree to cooperate fully to implement and effectuate the terms of this Agreement, including executing all necessary documents.

D.      <u>Enforcement Actions</u>

If any party institutes any legal action or other proceeding for the purpose of enforcing this Agreement against any other party, the unsuccessful party shall be required to pay the successful party all reasonable attorney's fees and costs incurred in enforcing the Agreement.

E.    Limitations On Publicity

1.    The parties and their counsel agree that they shall not publicize this settlement or the events and negotiations surrounding this Agreement in any way prior to final approval of the Agreement except by joint pleadings filed with the Court.  Notwithstanding the foregoing, the parties agree that the fact that the parties have reached a settlement of the Lawsuit is not confidential, and that the parties and their counsel may communicate that the Lawsuit was resolved.  Nothing in this paragraph prevents defendant from making necessary public disclosures regarding the settlement and discussing the settlement with securities analysts and financial institutions.  Further, nothing in this paragraph shall be construed to violate applicable laws or ethical rules.

2.    If any party believes a statement is made in violation of paragraph VI.E.1, the parties shall meet-and-confer informally in an effort to resolve the dispute.  If the dispute cannot be resolved informally, it shall be submitted to the Court for resolution.  In the event the Court decides that a violation has occurred, the determination shall be binding, and the offending party must immediately cease and desist from making the statement or statements.  The prevailing party shall be entitled to an award of reasonable attorney's fees and costs.

F.    Modification

This Agreement and its exhibits may not be changed, altered, or modified, except in a writing signed by the parties and approved by the Court.

G.    Entire Agreement

This Agreement and its exhibits constitute the entire agreement between the parties concerning the subject matter hereof.  No extrinsic evidence of any kind shall modify or contradict the terms of this Agreement.

H.    Voiding This Agreement

1.    In the event this Agreement is not approved by the Court, the Agreement shall be null and void in its entirety.

2.    Notwithstanding paragraph VI.H.1, if the Court rejects any portion of paragraph VI.E.1 or paragraph VI.E.2, the parties agree that such portions shall be removed from this Agreement or modified in a manner consistent with the Court's ruling.  The enforceability of the remainder of this Agreement shall not be affected by such removal or modification.

3.    If judicial approval of this Agreement is otherwise denied, the parties shall attempt to reach agreement on provisions rejected by the Court for a period not fewer than 45 days after the date on which approval is denied.  The parties shall file a joint motion for a stay of the Lawsuit during the 45-day period.

I.    Counterparts

This Agreement may be executed in counterparts, and when each party has executed at least one counterpart, the counterpart will be deemed an original, and when taken together, the counterparts will constitute one Agreement, which shall be binding and effective as to all parties.

J.      <u>Binding on Assigns And Successors</u>

This Agreement shall be binding upon, and inure to the benefit of, the parties, and their respective heirs, trustees, executors, successors, legal administrators, and assigns.

K.      <u>Miscellaneous</u>

1.      Plaintiff and Class Counsel agree that any information and documents exchanged in connection with this settlement are confidential and shall be used solely for purposes of ensuring compliance with the terms of this Agreement.

2.      The headings contained in this Agreement are for reference only and are not to be construed as part of the Agreement.

3.      The United States District Court for the Southern District of Ohio shall have jurisdiction to interpret and enforce this Agreement.

4.      No party or Settlement Class member shall be considered a prevailing party for any purpose.

In witness hereof, the parties and their duly authorized representatives have executed this Agreement below.

**\*\*SIGNATURES ON FOLLOWING PAGE\*\***

Dated: _____

Shannon Draher
NILGES DRAHER LLC
7266 Portage Street, N.W., Suite D
Massillon, OH 44646

Counsel for Plaintiff and the Settlement Class

Dated: 2/00/17

Nathan J. Oleson
Joshua K. Sekoski
AKIN GUMP STRAUSS HAUER & FELD
LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036

Aaron T. Brogdon
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH 43215

Counsel for defendant

Dated: 2/20/2017

Jeffrey Lackie
3390 State Highway 42
Turrell, Arkansas 72384

Plaintiff

Dated: 2/23/17

STINGRAY PRESSURE PUMPING LLC
Mark Layton, Chief Financial Officer
4727 Gaillardia Parkway, Suite 200
Oklahoma City, OK 73142

Defendant

Page 11 of 11